JACOB KENTNER

v.

PETER KLINE.

Where the evidence of several witnesses, giving positive testimony to the same fact, stands in irreconcilable conflict, the question of numbers, if the witnesses are of equal credit, becomes one of the highest importance; for, as a general rule, the evidence of the greater number is more likely to be true than that of the smaller number.

On final hearing on bill and answer and proofs taken in open court.

*Mr. Chester Van Syckel* and *Mr. John A. Bullock* for complainant.

*Mr. William A. Cotter* and *Mr. John N. Voorhees*, for defendant.

VAN FLEET, V. C.

The object of the bill in this case is to have the title to one hundred and twenty-six hickory trees, standing on lands of the defendant, ascertained and settled.   The complainant claims to have purchased that number of trees of the defendant for $320, and to have paid him, at the time of the purchase, $310, and to have subsequently tendered him the other $10.   The defendant admits the purchase, but says that the price the complainant agreed to pay was $420, and not $320.   In consequence of the defendant's refusal to allow the complainant to enter upon his lands, to cut and remove the trees, the complainant has brought

Kentner·v. Kline.

this suit. He asks that the title to the trees may be adjudged to be in him, and that the defendant may be enjoined from interfering with him while he is cutting, working up and removing the trees.

The dispute between the parties is confined to a single question : Was the complainant to pay $320, or $420, for the trees ? If the proofs show that the price of the trees was $320, the complainant is entitled to the relief he asks; if, on the contrary, they show that it was $420, his bill must be dismissed. The burden of proof is on the complainant. To be entitled to prevail, his proofs on the point of dispute must outweigh those of the defendant. But for a piece of written evidence produced by the complainant, the case, on the question as to which way the proofs preponderate, would be free from the least difficulty.

Four persons were present when the parties commenced their negotiations, namely, the complainant and the defendant and two of the defendant's grandsons. All four give substantially the same account of what occurred, except as to the price. They agree that the complainant opened the negotiation by asking the defendant what he would take for all his hickory trees, and that the defendant replied that he would not sell all, but would sell one hundred trees, and that the complainant then asked the defendant what he wanted for one hundred trees. The defendant and his two grandsons say that the reply to this question was, "$400—$4 a tree, as I told you before," and that the complainant then said, after a short pause, "I will give you $420 for one hundred and twenty-six trees." The complainant, on the contrary, says that the defendant's answer to his question, asking what he wanted for one hundred trees, was $300, and that after a short pause he offered the defendant $300 for one hundred and twenty-six trees.

Each of these witnesses seems entitled to equal credit. In testifying, they all spoke with apparent candor and truthfulness, and seemed to utter what their consciences told them was the truth. Awarding equal credit to each, it is obvious that the weight of the evidence inclines strongly against the complainant. The knowledge, recollection and veracity of three credible witnesses,

two of whom are without the least pecuniary interest in the re-
sult of the suit, stand opposed to him. He is not only alone,
but he stands contradicted by three witnesses, each of whom is
his peer in credit and respectability. Where the evidence of
several witnesses, giving positive testimony to the same fact,
stands in irreconcilable conflict, the question of numbers, if the
witnesses are of equal credit, becomes one of the highest import-
ance; for, as a general rule, the evidence of the greater number
is more likely to be true than that of the smaller number. And
the reason this is so is that it is much easier for one person
to get a wrong impression about a fact, or to fall into a mistake
concerning it, than it is for three, or even two; and if two or
more persons do become mistaken about a fact it is highly im-
probable that they will all fall into the same mistake. And it
is also much more improbable that two or more persons will
commit perjury than that one will. All that one person need
do, who resolves to commit perjury, is to invent and arrange a
story so as to give it the appearance of truth, and if, while he is
under the trial of cross-examination, he discovers that his story
is improbable or incomplete, he may at once, without serious
danger of detection, make such changes in it as he may think
will cure its defects; but where several persons conspire to com-
mit perjury, there must be concert; they must first be persons so
depraved that they are willing to join in the commission of a
high crime, and so lost to all sense of shame as to be willing to
confess their infamy to one another; they must likewise agree,
not only upon the main body of their story, but upon its details,
and upon the order in which they occurred, and if, while they are
undergoing the ordeal of cross-examination, defects in their story
are exposed, they will not dare to change it, for if they do they
will run the risk of being contradicted by their associates, and
if they adhere to it they know that they will incur the hazard of
detection, together with all of its dangerous consequences. So
that in a case like the present, where the testimony of three wit-
nesses stands in direct contradiction of a single witness, the
probabilities are so overwhelmingly in favor of the truth of the
evidence of the three that it must be believed. The weight of

the oral evidence on the point in dispute is very strongly against the complainant, and unless his case is supported by some other kind of evidence, it is manifest his bill must be dismissed.

There is other evidence. The complainant has a receipt, signed by the defendant, acknowledging the payment of $320 " for one hundred and twenty-six choice hickory trees of his [the complainant's] selection." If the defendant had written this receipt himself it would furnish very strong, if not conclusive evidence, that the price agreed upon was $320. Neither of the parties, however, wrote it. The contract was made during the afternoon of the 1st day of March, 1886. As soon as it was concluded the complainant handed the defendant $10 to bind the bargain, and then went to his house, about four miles distant, to get the money he had there to make an additional payment. While at his house his wife, at his request, wrote the receipt; he then returned to the defendant's house, and paid him $300, making $310 in all, and procured the defendant's signature to the receipt. If the defendant signed the receipt, clearly understanding that it stated the price of the trees to be $320, he should be held to be concluded by it. He swears that he did not so understand it. He is about seventy years of age, and cannot read without the aid of glasses. He says that his glasses, at this time, were broken so that they were useless, and that he tried to read the receipt without them, but could not. He also says that even with the aid of glasses he cannot read written matter understandingly until he has first had an opportunity to study it. It is admitted that the complainant read the receipt to the defendant, or pretended to do so, but the defendant and his daughter both say that he did not mention any sum, but read the paper as though it merely stated that the complainant had purchased of the defendant one hundred and twenty-six trees. The receipt is confessedly inaccurate. It admits a payment of $10 that was not made. It is a receipt for $320, but the complainant confesses he only paid $310. If the amount stated in the receipt had been read so that the defendant clearly understood that if he signed it he would admit the payment of $10 which had not been paid, it is almost absolutely certain that he would

have called attention to the fact that the amount was erroneous, and asked to have it corrected. But nothing of that kind seems to have occurred. No allusion was made by either party, so far as the evidence shows, to the fact that the sum stated in the receipt was in excess of the sum actually paid. And this circumstance serves, in my judgment, to show either that the sum was not mentioned, or, if it was, that the defendant did not fully comprehend its meaning; for I regard it as entirely certain that no man, having sufficient capacity to understand such a transaction, would sign a paper of this kind, which he knew to be erroneous, and which he also knew contained an admission against his interest, without at least calling attention to its error. He would do that, if for no other purpose, to show that he knew what he was doing.

But there is other evidence tending very strongly to show, as I think, that the defendant did not understand, at the time he signed the receipt, that it fixed the price of the trees at $320. The receipt was signed on Monday. The next day the defendant heard that the complainant claimed that he had purchased the trees for $320. On Wednesday the defendant sent his son-in-law to complainant to tell him that he heard that the complainant had claimed that he had purchased the trees for a price less than that which he understood the complainant had agreed to pay, and also to tell the complainant that he wanted to see him. The complainant did not call until the following Saturday. The defendant then told the complainant that the price he was to receive for the trees was $420—that that was the price the complainant had offered, and that he had agreed to accept. The complainant denied this, declaring that all he had offered was $320, and that that was the sum for which the defendant had agreed to sell, but he made no allusion to the receipt. He did not say: "Why, there should be no dispute between us about this matter—you know we had not only a distinct understanding about the price, but you afterwards gave me a receipt, which I read to you, and which you know states the price to be $320." If the defendant's signature to the receipt had been procured in the manner in which the complainant states it was, if he had

read it to the defendant so that he understood it, the receipt was
the complainant's strongest and best witness, and the one to
whom he would, almost involuntarily, have made his first and
most confident appeal.  But he did not mention it, nor did he
take it with him.  Though he knew that the defendant disputed
the correctness of the price stated in the receipt, and that the
defendant wanted to see him, to see whether the misunderstand-
ing on that subject could not be cleared up, yet when he went to
see the defendant he left his receipt at home.  He went without
the instrument which, if it had been procured in the way he
says he procured it, would at once have disproved and utterly
overthrown the defendant's claim of mistake.  It should also be
remarked in this connection that the evidence of the complainant
is not entitled to receive the consideration which would be given
to the testimony of an unimpeached witness.  His testimony,
on the most vital point of the case, has been contradicted by
such a volume of opposing evidence as to make it the duty of
the court to discard his evidence, and this fact necessarily weakens
the force of his evidence upon every disputed point.

On a full view of the whole case, my conclusion is that the
weight of the proofs, by a decided preponderance, is against the
truth of the allegation on which the complainant's right to re-
lief rests.  His bill must therefore be dismissed, with costs.